**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHYSICIANS HOME HEALTH INFUSION, P.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case no. 4:18cv01959 PLC** |
| | ) | |
| **UNITEDHEALTHCARE OF THE MIDWEST, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Defendant United Healthcare of the Midwest, Inc.'s ("UHC's") motion to dismiss amended complaint [ECF No. 40]. Plaintiff Physicians Home Health Infusion, P.C., ("PHHI") opposes the motion [ECF No. 49]. Also pending are PHHI's motion for sanctions related to a deposition [ECF No. 62] and PHHI's motion to compel discovery responses [ECF No. 77]. The Court stayed discovery pending resolution of UHC's motion to dismiss [ECF No. 85]. Therefore, the Court first resolves UHC's motion to dismiss.

### I.      Background

In its first amended complaint, PHHI seeks from UHC monetary and injunctive relief based on claims for breach of contract (Count I), negligent misrepresentation (Count II), quantum meruit (Count III), unjust enrichment (Count IV), and "preliminary and permanent injunction" (Count V).[2] PHHI makes the following allegations in support of its claims.

---

[1] The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] PHHI specifies that Counts II, III, and IV are "[p]led in the [a]lternative to Count I." Pl.'s first am. compl. at 8, 11, 12 [ECF No. 38]. Additionally, PHHI alleges that Count II is "[p]led in the [a]lternative to Counts III and IV." Id. at 8.

PHHI is "a home healthcare agency employing physicians and nurses to provide pain management services [through 'continuous spinal infusion of pain medication'] to patients diagnosed with chronic pain." Id. ¶¶ 7, 18. More specifically, PHHI provides trained nurses, available twenty-four hours a day, for "specialized services related to spinal infusion," including "pump management, rate adjustments, refills, troubleshooting, consultations and training." Id. ¶ 8.

UHC "is a private health insurance agency that[, in relevant part,] provides Medicare Advantage plans" that "are approved by [the] Centers for Medicare & Medicaid Services ('CMS')." Id. ¶ 11. PHHI is a "non-participating" or "out-of-network" provider under the terms of UHC's group health insurance policies for individuals participating in Medicare Advantage (also referred to as "members" or "enrollees"). Id. ¶¶ 11, 12. Before PHHI renders its services, each of its patients signs an "Admission Service Agreement and Patient Health Information Consent Form," which grants PHHI "the right to directly receive the[ patient's] health benefit payments" as the patient's assignee. Id. ¶¶ 14-17.

After providing services to a patient, PHHI submits a request for reimbursement to UHC, billing "the usual and customary amount of $2400 for the services rendered under the Healthcare Common Procedure Coding System (HCPCS) codes S9325 and S9328." Id. ¶¶ 19, 20. Those two codes "identify services of home infusion therapy and pain management infusion." Id. ¶¶ 20, 21. PHHI alleges that, regardless of whether it has obtained UHC's prior authorization to provide the services under codes S9325 and S9328, UHC does not consistently approve PHHI's claims for

reimbursement of its pain management services.[3]  Id. ¶¶ 23-25, 28. When UHC approves the services coded S9325 and S9328, "UHC reimburse[s PHHI] $600 per service claim."  Id. ¶ 31.

On occasion, when UHC provides an explanation for its denial of PHHI's claims under codes S9325 and S9328, UHC states "that the codes are not valid."  Id. ¶ 25.  PHHI appeals "UHC's denials for reimbursement . . . to UHC's Claims Department, UHC's Appeals and Grievance Department, and other UHC departments."  Id. ¶ 26.  As a result of these appeals, UHC occasionally reverses the initial denial and reimburses PHHI "for the services rendered . . . under the codes S9325 and S9328," and issues letters "recognizing that its initial denial was a 'clerical error' and making clear that the service is reimbursable and the codes are valid."[4]  Id. ¶¶ 27, 28. PHHI "has relied on [UHC's] statements, corrections, and reimbursements in continuing to provide services to . . . UHC [Medicare Advantage] Patients."  Id. ¶ 29.

When UHC denies an appeal by PHHI, UHC has "instructed [PHHI] that it will not reimburse [PHHI] for the services rendered."  Id. ¶ 32.  PHHI responds with letters and telephone calls seeking reimbursement and "an explanation for why UHC arbitrarily denied some appeals while accepting others."  Id. ¶ 33.  PHHI alleges that "UHC has not provided any information to adequately or even plausibly explain its arbitrary and contradictory conclusions regarding the reimbursement of services properly coded under the codes S9325 and S9328."  Id. ¶ 34.  Recently, PHHI asserts, UHC claimed "that all or a portion of the improper and arbitrary actions by UHC are the result of recklessly hired and/or retained contractors that UHC has failed to appropriately supervise."  Id. ¶ 35.

_____

[3]  PHHI also alleges that "all insurance carriers except UHC reimburse [PHHI] for the services submitted under the codes S9325 and S9328" that are rendered to Medicare Advantage patients.  Pl.'s first am. compl. ¶ 22 [ECF No. 38].

[4]  In its first amended complaint, PHHI alleges that "as recently as January 10, 2019," UHC "told [PHHI] that its initial decision that [certain] claims [submitted by PHHI] were invalid was made 'in error,' and has reimbursed" PHHI for those particular claims.  Pl.'s first am. compl. ¶ 40 [ECF No. 38].

From January 1, 2016, to March 31, 2018, PHHI billed UHC over $2,674,000.00 "for services rendered to UHC [Medicare Advantage patients]. This amount represents the value of the services provided" by PHHI. Id. ¶ 36. PHHI alleges "UHC has failed to reimburse [PHHI] for well over half . . . of th[e] billed amount" and the "amount continues to accrue, as [PHHI] continues to rely on UHC's past reimbursement of services coded S9325 and S9328 . . . to render pain management services to [UHC's Medicare Advantage] patients." Id. ¶ 37. PHHI further alleges that, "[i]n continuing to provide services to UHC's [Medicare Advantage] patients, [PHHI] has purchased products, hired and paid employees, forgone other profitable endeavors, and expended time, energy, and effort in reliance on UHC's representations." Id. ¶ 38. Moreover, PHHI alleges, it "has incurred lost time and profits" because, between January 1, 2016 and February 20, 2019, it and its employees "have spent approximately thirty hours per week appealing UHC's denials of reimbursement for services coded under S9325 and S9328." Id. ¶ 39.

For its breach of contract claim in Count I, PHHI alleges that UHC's Medicare Advantage patients have "a valid and enforceable written contract with UHC . . . [for UHC] to provide the UHC [Medicare Advantage p]atients health insurance under UHC's Medicare Advantage plan" and those patients assign their benefits to PHHI, "instruct[ing] UHC to reimburse [PHHI] for health services" it renders. Id. ¶¶ 42, 43. PHHI asserts it "fully and adequately performed" by treating UHC's Medicare Advantage patients and "properly submitting requests for reimbursement to UHC for CMS and UHC-approved health services rendered to" those patients. Id. ¶ 44. UHC, however, "breached the health insurance contract by refusing to reimburse [PHHI] for . . . services [PHHI] rendered to the UHC [Medicare Advantage p]atients." Id. ¶ 45. Because it is the assignee under the UHC Medicare Advantage patients' contracts, PHHI alleges it "has suffered damages equal to the amount of unpaid claims [it] submitted to UHC that remain unpaid, plus pre-judgment

interest, which has been and is herein again demanded." Id. ¶ 47. PHHI alleges "[t]he total amount

of damages continues to accrue, but is well in excess of $500,000." Id. In addition to seeking

monetary relief,[5] PHHI asks the Court to enter a

> preliminary and/or permanent injunction preventing UHC from wrongfully denying
> claims for services coded as S9325 and S9328 and ordering UHC to apply the same
> standards and provide a full and fair review to [PHHI]'s claims for services coded
> as S9325 and S9328 at each stage of the review process.

Id. at 8, subparagraph (a) of the WHEREFORE paragraph for Count I.

In the negligent misrepresentation claim in Count II, PHHI seeks only monetary relief[6] for

UHC's "negligent and reckless behavior." Id. ¶ 49. In particular, PHHI alleges that in the course

of their dealing, UHC has: (1) represented that claims coded as S9325 and S9328 are reimbursable,

(2) reimbursed PHHI for services with those codes, (3) given "written prior approval for the

services to be provided to specific patients" for those codes, and (4) reversed its initial denials of

PHHI's requests for reimbursement submitted under those codes as "'incorrect' and the result of

a 'clerical error.'" Id. ¶¶ 50-53. PHHI alleges that UHC "now arbitrarily and sporadically changes

its position and refuses to reimburse [PHHI] for service codes S9325 and S9328." Id. ¶ 54.

To support its negligent misrepresentation claim, PHHI further alleges that UHC "failed to

exercise reasonable care and provided [PHHI] with false information that service codes S9325 and

S9328 were reimbursable," and intended that PHHI would rely on the representations and course

---

[5] For its breach of contract claim, PHHI specifically seeks the following monetary relief: (1) more than $500,000 "related to the non-payment of goods and services," (2) reasonable attorneys' fees, (3) court costs, (4) pre-judgment interest, and (4) post-judgment interest. Subparagraphs (b) through (d) of the WHEREFORE paragraph for Count I of Pl.'s first am. compl. [ECF No. 38 at 8].

[6] For its negligent misrepresentation claim in Count II, PHHI states that it "does not seek reimbursement necessarily related to the amount of Medicare claims, but seeks tort damages directly from UHC separate and apart from Medicare reimbursement." Pl.'s first am. compl. ¶ 49 [ECF No. 38]. PHHI specifically seeks the following monetary relief for UHC's alleged negligent misrepresentations: (1) more than $500,000 in damages, "including punitive damages, for all injuries proximately caused [by] UHC's negligent misrepresentation," (2) reasonable attorneys' fees, (3) court costs, (4) pre-judgment interest, and (4) post-judgment interest. Subparagraphs (a) through (c) of the WHEREFORE paragraph for Count II of Pl.'s first am. compl. [ECF No. 38 at 10].

of conduct between the parties "when [PHHI] elected to provide services to UHC [Medicare Advantage p]atients." Id. ¶¶ 55, 56. Relying justifiably on "UHC's representations and course of conduct[, PHHI alleges it] render[ed] services to UHC [Medicare Advantage p]atients and bill[ed] UHC under the service codes S9325 and S9328," and "continue[s] to provide services to UHC's [Medicare Advantage p]atients, . . . purchase[] products, hire[] and pa[y] employees, forg[o] other profitable endeavors, and expend[] time, energy, and effort in reliance on UHC's representations." Id. ¶¶ 58, 59. As a result of UHC's representations and course of conduct, PHHI alleges:

> since January 2016, [PHHI] has incurred hours of time and thousands of dollars of lost profits by dedicating approximately thirty hours per week to seeking reimbursement from UHC for claims of service submitted under the codes S9325 and S9328.
>
> . . . [B]etween January 2016 and March 31, 2018, [PHHI] billed UHC a total of [more than $2,674,000.00], which represents billed value of services rendered, and well over half of this billed amount remains outstanding. To date [PHHI] continues to bill and continues to incur amounts outstanding for services [it] rendered to UHC [Medicare Advantage p]atients.

Id. ¶¶ 59, 60.

In Count III, based on quantum meruit, PHHI asserts (1) it "provides services to UHC [Medicare Advantage p]atients at the request of and with the knowledge of UHC," (2) PHHI's services have "reasonable value," (3) PHHI "bills UHC the customary and reasonable amount for each service coded S9325 and S9328," and (4) "[o]n numerous occasions, UHC "employees acknowledged over the phone and in letters that [PHHI] should be reimbursed for services coded S9325 and S9328." Id. ¶¶ 62-67. Therefore, PHHI alleges, UHC made "an implied promise to reimburse [PHHI] for the services [it] rendered to" UHC Medicare Advantage patients but has refused to pay PHHI "despite [PHHI]'s numerous appeals." Id. ¶¶ 68, 69. PHHI further claims

that it is "entitled to be paid . . . a fair and reasonable amount for the goods and services it provided to UHC [Medicare Advantage p]atients," and seeks monetary relief[7] from UHC. Id. ¶ 70.

In its unjust enrichment claim in Count IV, PHHI alleges it "conferred a benefit upon UHC" by providing services to UHC Medicare Advantage patients, and UHC "appreciated a benefit" by its Medicare Advantage patients "accepting the services rendered by" PHHI. Id. ¶ 73. Furthermore, PHHI alleges, "UHC accepted and retained the benefit conferred upon it by [PHHI] under inequitable and/or unjust circumstances by failing to make the required payments to" PHHI for the services it rendered, and PHHI has suffered damages "[a]s a result of the benefit conferred upon UHC." Id. ¶¶ 74, 75. In particular, PHHI asserts that it "has billed UHC a total of [more than $2,674,000.00] and UHC failed to reimburse [PHHI] for well over half of this . . . billed amount. To date, [PHHI] continues to bill and continues to incur amounts outstanding for services [it] rendered to UHC [Medicare Advantage p]atients." Id. ¶ 76. PHHI seeks an award of monetary relief.[8] WHEREFORE paragraph for Count IV of Pl's first am. compl. [ECF No. 38 at 13].

In Count V, PHHI seeks a preliminary and permanent injunction, as well as an award of "[r]easonable attorneys' fees and court costs," due to the "flawed process" provided by UHC, because "further participation in that process would be futile" and no adequate remedy at law exists for PHHI. Pl.'s first am. compl. WHEREFORE ¶ and ¶¶ 79-84 [ECF No. 38 at 15, 14]. Specifically, PHHI alleges UHC's "flawed process" consists of:

---

[7] Specifically, PHHI seeks an award of "[m]oney damages, in excess of $500,000, including punitive damages, related to the non-payment of goods and services," "reasonable attorneys' fees and court costs permitted by law," and "[p]re-judgment and post-judgment interest." Subparagraphs (a) through (c) of the WHEREFORE paragraph for Count III of Pl.'s first am. compl. [ECF No. 38 at 12].

[8] Specifically, PHHI seeks an award of "[m]oney damages, in excess of $500,000, including punitive damages, related to the non-payment of goods and services," "reasonable attorneys' fees and court costs permitted by law," and "[p]re-judgment and post-judgment interest." Subparagraphs (a) through (c) of the WHEREFORE paragraph for Count IV of Pl.'s first am. compl. [ECF No. 38 at 13].

(1) UHC acting "recklessly and/or negligently, and . . . fail[ing] to appropriately follow non-arbitrary procedures for analyzing and paying [PHHI]'s claims for reimbursement for services properly rendered to UHC's [Medicare Advantage p]atients";

(2) UHC responding to PHHI's attempts "to engage in a legitimate reconsideration and appeal process with UHC" by "provid[ing] contradictory, incomplete, and long-delayed responses";[9] and

(3) UHC "recklessly hir[ing] and/or retain[ing] contractors that UHC has failed to appropriately supervise."

Id. ¶¶ 78, 79, 80, 82.

In response to PHHI's first amended complaint, UHC filed a motion to dismiss.

## II.     Discussion

### A.   Motion to dismiss

UHC moves to dismiss PHHI's first amended complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground this Court lacks subject matter jurisdiction over the complaint and under Rule 12(b)(6) on the ground the first amended complaint fails to state a claim upon which relief can be granted. UHC first argues that PHHI's state law claims are "inextricably intertwined" with a claim for Medicare benefits and, therefore, arise under the Medicare Act. Because PHHI's claims arise under the Medicare Act, UHC urges, PHHI is required to, but failed to, exhaust available administrative remedies before pursuing its claims in federal court and, therefore, the Court must dismiss the claims. PHHI counters that its claims do not arise under the

---

[9] PHHI further alleges that UHC's responses to PHHI's requests for reconsideration are "var[ied]" and include, as examples, responses: "direct[ing PHHI] to contracts that do not exist," "falsely stat[ing] that certain claims are not 'valid' despite the fact that UHC has reimbursed for the exact same service for the exact same patient, and continues to do so for other claims without distinction," "ignor[ing] UHC's own prior approval of the services at issue," and "provid[ing] no detailed explanation or meaningful guidance for any decisions supposedly made." Pl.'s first am. compl. ¶ 80 [ECF No. 38 at 14].

Medicare Act because (1) no enrollees have been refused services, (2) "the Court need not rely on the Medicare Act to determine if [UHC] owe[s relief] to" PHHI, and (3) PHHI "seeks equitable and legal relief due to UHC's" own "careless (or intentional) misrepresentations" and "tortious actions." PHHI's opp'n mot. dismiss at 2-3, 5 [ECF No. 49]. If the Court concludes PHHI's claims are subject to the Medicare Act and an administrative exhaustion prerequisite to judicial review, PHHI asserts that prerequisite is waived and inapplicable under the circumstances because: (1) PHHI's state law claims are collateral to a claim for benefits and this litigation "involves [PHHI]'s procedural rights," (2) PHHI's exhaustion of administrative remedies would be futile, and (3) PHHI will suffer irreparable harm if the Court requires it to pursue administrative remedies. Id. at 10-15. UHC responds that PHHI does not meet any of the criteria for waiver of the exhaustion requirement.

Alternatively, UHC contends that PHHI's state law claims are preempted by the Medicare Advantage statute's broad preemption provision, 42 U.S.C. § 1395w-26(b)(3), that supersedes all state laws and regulations except those pertaining to licensing and plan solvency. UHC argues this statutory provision preempts all of PHHI's state law claims, which do not focus on state licensing and plan solvency issues. PHHI responds that the statutory provision on which UHC relies preempts state law only with respect to "standards established under" the Medicare Advantage program and PHHI "is not trying to replace or supersede the Medicare standards with state law standards," but instead "seeks recovery for UHC's failure to follow [the applicable Medicare] rules." PHHI's opp'n mot. dismiss at 16 [ECF No. 49].

(1) Standard of review

a. Rule 12(b)(1) motion to dismiss

A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action. Subject matter jurisdiction is the power of a federal court to decide the claim before it. Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 562 (2017). "If the asserted basis of federal [subject matter] jurisdiction is patently meritless, then dismissal for lack of [subject matter] jurisdiction is appropriate." Biscanin v. Merrill Lynch & Co., 407 F.3d 905, 907 (8th Cir. 2005); accord Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (district courts "are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit") (internal citations and quotation marks omitted); Rule 12(h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Rule 12(b)(1) movants "may assert either a 'facial' or [a] 'factual' attack on [a federal court's subject matter] jurisdiction." Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); see also Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (a Rule 12(b)(1) movant may challenge a pleading either "on its face or on the factual truthfulness of its averments"). A federal court deciding a motion under Rule 12(b)(1) "must distinguish between a facial attack – where it looks only to the face of the pleadings – and a factual attack – where it may consider matters outside the pleadings." Croyle by and through Croyle v. United States, 908 F.3d 377, 380 (8th Cir. 2018).

For a facial attack, the 12(b)(1) movant "asserts that the [challenged pleading] fails to allege sufficient facts to support subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (internal quotation marks and citation omitted). In resolving "a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal quotation marks and citation omitted). Therefore, a court considering a facial attack on

the court's subject matter jurisdiction must: (1) evaluate "whether the asserted jurisdictional basis is patently meritless by looking to the face of the [pleading] . . . and drawing all reasonable inferences in favor of the" pleader, Biscanin, 407 F.3d at 907 (internal citations omitted); and (2) presume "all of the factual allegations concerning jurisdiction are . . . true," Titus, 4 F.3d at 593. The 12(b)(1) motion presenting a facial challenge to a federal court's subject matter jurisdiction "is successful if the [pleader] fails to allege an element necessary for subject matter jurisdiction." Id.

   b. Rule 12(b)(6) motion to dismiss

   When resolving a Rule 12(b)(6) motion to dismiss for a pleader's failure to state a claim upon which relief can be granted, a federal court must regard as true the facts alleged in the challenged pleading and determine whether they are sufficient to raise more than a speculative right to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); accord Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (under Rule 12(b)(6), "the factual allegations in the [challenged pleading] are accepted as true and viewed most favorably to the" pleader). The court does not, however, accept as true any allegation that is a legal conclusion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Hager, 735 F.3d at 1013 ("[c]ourts must not presume the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986)").

   The pleading must set forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; accord Iqbal, 556 U.S. at 678; Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). "Although [the pleader] need not allege facts in painstaking detail, the facts alleged 'must be enough to raise a right to relief above the speculative level.' Twombly, 550 U.S. at 555." Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017). "[T]he [challenged pleading] should be read as a whole, not parsed piece by piece to determine whether each

allegation, in isolation, is plausible." Braden, 588 F.3d at 594. "The plausibility standard requires a [pleader] to show at the pleading stage that success on the merits is more than a sheer possibility." Id. (internal quotation marks and citation omitted). If the claims are only conceivable, not plausible, the court must dismiss the pleading under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Twombly, 550 U.S. at 570; accord Iqbal, 556 U.S. at 679.

Because UHC pursues a facial attack against the Court's subject matter jurisdiction, the Court applies the same standard whether resolving the motion to dismiss under Rule 12(b)(1) or 12(b)(6). Specifically, the Court accepts factual allegations in the first amended complaint as true, construes all inferences in favor of PHHI, and reviews only the allegations in that complaint to ascertain whether, for Rule 12(b)(1), they establish a basis for this Court to exercise subject matter jurisdiction over Plaintiff's claims or, for Rule 12(b)(6), they fail to state a claim upon which relief can be granted.

(2) Medicare Act overview

In 1965, Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395 et seq., established the Medicare program, "a federally funded health insurance program for the elderly and disabled." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 506 (1994). The Secretary of the United States Department of Health and Human Services ("HHS") oversees the Medicare program, which is administered by the Center for Medicare and Medicaid Services ("CMS"). Logan v. Sebelius, No. 1:12-cv-00118-CL, 2012 WL 4429090, at *2 (D. Or. Aug. 6, 2012), report and recommendation adopted by 2012 WL 4427704 (D. Or. Sept. 24, 2012).

The Medicare statute, 42 U.S.C. Sections 1395 to 1395lll,

divides [Medicare] benefits into four parts: Part A, Part B, Part C, and Part D. Parts A and B create, describe and regulate traditional fee-for-service, government-administered Medicare for inpatient hospital services (Part A) and for physician services and outpatient services (Part B) . . . . Part D provides for

- 12 -

> prescription drug coverage for Medicare enrollees. . . . Part C, also called the Medicare Advantage . . . program [and previously known as the Medicare + Choice program] allows Medicare enrollees to obtain their Medicare benefits through private [organizations or Medicare Advantage Organizations, such as private insurers,] instead of receiving direct benefits from the government under Parts A and B. See 42 U.S.C. § 1395w-21(a)(1) . . . .

Logan, 2012 WL 4429090, at *2 (various citations and a footnote omitted); see also Minnesota Senior Fed'n, Metro. Region v. United States, 273 F.3d 805, 807 (8th Cir. 2001).

The new Medicare Part C, previously referred to as Medicare + Choice, and now referred to as Medicare Advantage, was added in 1997. See Minnesota Senior Fed'n, Metro. Region, 273 F.3d at 807; Pub. L. No. 105-33, § 4001, 111 Stat. 251 (1997) (codified as amended at 42 U.S.C. Sections 1395w–21 to 1395w–29).

> . . . Under Medicare Part C . . ., [Medicare Advantage Organizations] . . . contract with the [CMS] . . . to provide medical treatment to Medicare enrollees. CMS pays [Medicare Advantage Organizations] a pre-negotiated lump sum . . . (known as a "capitated payment") for each enrollee that the [Medicare Advantage Organization] agrees to cover. In exchange, the [Medicare Advantage Organization] assumes all of the financial risk for treating that enrollee. See 42 U.S.C. §§ 1395w–24-25 . . . . If the cost of treatment exceeds the amount that the [Medicare Advantage Organization] was paid, the federal government is not liable for the cost overruns—the [Medicare Advantage Organization] bears the loss. . . . Under Medicare Part C, [Medicare Advantage Organizations] provide the same benefits that an enrollee would receive through the traditional, government-administered, fee-for-service programs under Medicare Parts A and B, as well as additional benefits. . . .

> As the organizations responsible for administering benefits, [Medicare Advantage Organizations] make determinations as to whether a certain type of treatment is covered under the Medicare regulations, and if so at what rate an enrollee may be reimbursed. 42 U.S.C. § 1395w-22(g)(1)(A). When a dispute with an enrollee arises on one of these issues, it is adjudicated according to CMS regulations. The [Medicare Advantage Organization]'s initial decision regarding coverage is classified as an "organization determination," which the Medicare Act defines as a decision "regarding whether an individual enrolled with the plan of the organization under this part is entitled to receive a health service under this section and the amount (if any) that the individual is required to pay with respect to such service." [42 U.S.C.] § 1395w-22(g)(1)(A). Organization determinations also include decisions by an [Medicare Advantage Organization] to not cover, reimburse, or provide for a treatment that "the enrollee believes" is covered by

Medicare.[10]  HHS's regulations define potential parties to an "organization determination" as an "enrollee," the "assignee of an enrollee," the "legal representative of a deceased enrollee's estate," or "[a]ny other provider or entity (other than the [Medicare Advantage O]rganization) determined to have an appealable interest in the proceeding."  42 C.F.R. § 422.574.

If any one of the foregoing parties wishes to challenge any aspect of an organization determination, that party must exhaust its administrative remedies by following a specific procedure for administrative appeal prescribed by the Medicare Act and its implementing regulations.  See 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622.  A party may only bring suit in an Article III court to challenge an organization determination once all of the administrative remedies provided by the Act and its regulations have been exhausted.   See 42 U.S.C. § 405(g) (authorizing judicial review of "any final decision of the Commissioner of Social Security"); 42 U.S.C. [§] 1395w-22(g)(5) (making 42 U.S.C. § 405(g) applicable to appeals of benefits denials under Medicare Part C); see also Heckler v. Ringer, 466 U.S. 602, 617 (1984) (noting that administrative exhaustion is a "prerequisite to jurisdiction" under 42 U.S.C. § 405(g)).  This is the sole pathway through which a party can obtain judicial review of any claim "arising under" the Medicare Act. 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii (applying 42 U.S.C. § 405(h) to Medicare Part C); see also Ringer, 466 U.S. at 614-15 (noting that 42 U.S.C. § 405(h) and 42 U.S.C. § 1395ii, provide that § 405(g), "to the exclusion of" Congress's provision for federal question jurisdiction under 28 U.S.C. § 1331, "is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act" (alteration in original)).

[Medicare Advantage Organizations] pay third-party healthcare providers to treat enrollees.  This can be done in one of two ways.  One option is for the

---

[10]  The Medicare regulations define organization determinations as:

. . . any determination made by a[] [Medicare Advantage O]rganization with respect to any of the following:

*    *    *

(2)   Payment for any other health services furnished by a provider other than the [Medicare Advantage O]rganization that the enrollee believes –

(i)      Are covered under Medicare; or

(ii)     If not covered under Medicare, should have been furnished, arranged for, or reimbursed by the [Medicare Advantage O]rganization.

(3)  The [Medicare Advantage O]rganization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the [Medicare Advantage O]rganization.

42  C.F.R. § 422.566(b).

[Medicare Advantage Organization] to enter into an express, written contract with a third-party provider, whereby it agrees to pay certain rates for certain categories of treatments. <u>See</u> 42 U.S.C. § 1395w-25(b)(4). The Medicare Act permits these types of contracts, and provides very few limitations on how they can be drafted. <u>See</u>, <u>e.g.</u>, 42 C.F.R. § 422.520(b) (requiring contracts between [Medicare Advantage Organizations] and providers to contain a prompt payment provision). The third-party providers that are parties to these agreements are called "contract providers." The second option is for a healthcare provider that is outside of an [Medicare Advantage Organization's] network of contract providers to provide treatment to a Medicare Part C enrollee, and then seek reimbursement from the [Medicare Advantage Organization] at a later date. These out-of-network providers are called "noncontract providers."

<u>Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.</u>, 875 F.3d 584, 586–88 (11th Cir. 2017), <u>cert. denied sub nom.</u> <u>Atlanta Med. Ctr., Inc. v. Care Improvement Plus S. Cent. Ins. Co.</u>, 139 S. Ct. 57 (2018) (footnote included with different numbering) (certain citations omitted).

With respect to judicial review, Section 405(h) of Title 42, as adopted for the Medicare Act by 42 U.S.C. Section 1395ii, provides that

> The findings and decision of the [Secretary of HHS] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary of HHS] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary of HHS], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [the Medicare Act].

<u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 529 U.S. 1, 9 (2000) ("Section 1395ii makes § 405(h) applicable to the Medicare Act 'to the same extent as' it applies to the Social Security Act"). "Though section 405(h) seems to be a conclusive bar of jurisdiction over Medicare claims, section 405(g) [of Title 42], after requiring exhaustion of administrative avenues of relief, limits the preclusive effect of section 405(h)." <u>Clarinda Home Health v. Shalala</u>, 100 F.3d 526, 529 (8th Cir. 1996) ("<u>Clarinda</u>"). Section 405(g) of Title 42 states, in relevant part, that:

[a]ny individual, after any final decision of [the Secretary] made after a hearing to which [the individual] was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action [filed in a federal district court as statutorily specified]. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing. . . .

The United States Supreme Court has held that the third sentence of Section 405(h) "provides that 405(g) . . . is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act" and "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. Section 405(g) for old age and disability claims arising under Title II of the Social Security Act." Heckler v. Ringer, 466 U.S. 602, 614-15 and 605 (1984) (footnote omitted). The Court in Ringer concluded the federal constitutional and statutory claims for injunctive and declaratory relief in that case arose under the Medicare Act. See id. at 609-10. State law claims were not before the Court in Ringer.

(3) Claims arising under the Medicare Act

UHC argues PHHI's state law claims arise under the Medicare Act for purposes of the third sentence of Section 405(h) because they are "inextricably intertwined" with a claim for Medicare benefits. PHHI counters that its claims do not arise under the Medicare Act because (1) no enrollees have been refused services, (2) "the Court need not rely on the Medicare Act to determine if [UHC] owe[s relief] to" PHHI, and (3) PHHI "seeks equitable and legal relief due to UHC's" own "careless (or intentional) misrepresentations" and "tortious actions." PHHI's opp'n mot. dismiss at 2-3, 5 [ECF No. 49].

As noted earlier, the third sentence of Section 405(h) provides, with respect to the Medicare Act, that "[n]o action against the United States, the [Secretary of HHS], or any officer

or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [the Medicare Act]." The two statutory sections mentioned in that sentence of Section 405(h) (28 U.S.C. §§ 1331 and 1346) encompass federal, not state law, claims. Section 1331 provides a federal district court with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," while Section 1346 grants a federal district court jurisdiction over various specific civil actions filed against the United States. PHHI's lawsuit against UHC does not fall within the express terms of either 28 U.S.C. Section 1331 or 28 U.S.C. Section 1346 because PHHI does not set forth any federal constitutional or statutory basis for its claims and does not name the United States as a defendant in this lawsuit. Instead, PHHI's first amended complaint explicitly presents only state law claims against UHC, as the only Defendant.

The Eighth Circuit has held that, in accordance with Section 405(h), state law claims arising under the Medicare Act are subject to judicial review only after the plaintiff exhausts administrative remedies. Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000 (8th Cir. 1998) ("Midland"). In Midland, the Eighth Circuit held "the jurisdictional bar imposed by sentence three of Section 405(h) extends to [administratively unexhausted] claims based on diversity of citizenship." Id. at 1004 (applying the analysis of the Seventh Circuit in Bodimetric Health Servs., Inc. v. Aetna Life & Cas., 903 F.2d 480, 488-90 (7th Cir. 1990), which the Eighth Circuit found "persuasive"). Therefore, the Court must determine whether PHHI's state law claims fall within the jurisdictional bar imposed by sentence three of Section 405(h) because they "aris[e] under" the Medicare Act.

Claims "aris[e] under" the Medicare Act when they "are inextricably intertwined with what . . . is in essence a claim for [payment of Medicare] benefits."[11] Ringer, 466 U.S. at 624. Courts

---

[11] The Supreme Court in Ringer also acknowledged it had earlier "construed the 'claim arising under' language [in the third sentence of 42 U.S.C. § 405(h)] quite broadly to include any claims for which 'both the standing

interpret this "arising under" standard broadly. See Ardary v. Aetna Health Plans of Cal., Inc., 98 F.3d 496, 500 (9th Cir. 1996); Bodimetric, 903 F.2d at 483.

In Ringer, four Medicare claimants, seeking only declaratory and injunctive relief, challenged a final ruling of the Secretary of HHS that prohibited payment of Medicare benefits for a specific surgical procedure on the grounds the Secretary's ruling violated federal "constitutional due process and numerous [federal] statutory provisions." Ringer, 466 U.S. at 609-10. Looking "behind the face of" the plaintiffs' claims, the Supreme Court found each claim was "at bottom, a claim that [the plaintiffs] should be paid for their . . . surgery." Id. at 614. Therefore, the Court concluded, the claims were "inextricably intertwined" with a claim for Medicare benefits, and, under 42 U.S.C. § 405(h), barred from judicial review unless exhausted administratively. Id.

While the Supreme Court in Ringer addressed only federal statutory and constitutional claims of Medicare claimants, the Eighth Circuit has applied Ringer's "arising under" analysis to a Medicare provider's state law tortious-interference-with-contract claim. Midland, 145 F.3d at 1004. The Eighth Circuit found, in Midland, that "[a] claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law" and "[a] claim does arise under the Medicare Act if it is 'inextricably intertwined' with a Medicare benefits determination." Id. Because the plaintiff Medicare provider in Midland was "[a]t bottom, . . . claiming [the defendant insurer] should have paid for [the provider's] services" and the provider's state law claim "would necessarily mean redeciding [the insurer's] Medicare claims decisions" regarding the claims

---

and the substantive basis for the presentation' of the claims is" the Medicare Act. Heckler v. Ringer, 466 U.S. 602, 615 (1984) (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975) (addressing a constitutional challenge to a Social Security Act provision)). PHHI urges without discussion that the standing and substantive basis of its state law claims do not arise under the Medicare Act. The Court need not further address this argument because the "inextricably intertwined" standard is an alternative basis for analyzing whether a state law claim "arises under" the Medicare Act for purposes of the third sentence Section 405(h). See, e.g., Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000 (8th Cir. 1998).

submitted by the provider, the Eighth Circuit concluded the plaintiff provider's state law claim arose under the Medicare Act.[12] Id.

Similar circumstances exist here, and the reasoning of the Eighth Circuit in Midland is dispositive with respect to PHHI's breach of contract, quantum meruit, and unjust enrichment claims. As PHHI characterized its lawsuit in its first amended complaint: "[t]his is an action arising from UHC's ongoing refusal to properly pay for services rendered by [PHHI] to UHC's Medicare Advantage program enrollees." Pl.'s first am. compl. ¶ 1 [ECF No. 38]. PHHI specifically seeks monetary relief "related to the non-payment of goods and services" in the breach-of-contract claim in Count I of its first amended complaint, the quantum-meruit claim in Count III of its first amended complaint, and the unjust-enrichment claim in Count IV of its first amended complaint.[13] Id. at 8, 12, and 13. Any goods and services for which PHHI seeks payment from UHC in Counts I, III and IV are goods and services PHHI provided as a home health care provider for patients enrolled in UHC's Medicare Advantage plan. Regardless of whether the state law claim is a breach of contract claim, a quantum meruit claim, or an unjust enrichment claim, these claims require analysis of whether UHC properly denied payment for PHHI's medical services to a Medicare enrollee under UHC's Medicare Advantage plan. PHHI's state law claims for breach of contract, quantum meruit, and unjust enrichment, therefore, present "at bottom, . . . claim[s UHC] should have paid for [PHHI's] services" under UHC's Medicare Advantage plan,

---

[12] Because the Eighth Circuit has held that a state law claim may arise under the Medicare Act, the Court need not further address PHHI's apparent contention that its claims do not arise under the Act because the Act is not cited or referenced in PHHI's first amended complaint. Pl.'s opp'n mot. dismiss at 4 [ECF No. 49]. Although the allegations in the first amended complaint do mention Medicare, UHC's Medicare Advantage plan, UHC's Medicare Advantage program enrollees, UHC's Medicare Advantage patients, and CMS, PHHI does not specifically cite or refer to the Medicare Act or any of its provisions in that complaint.

[13] In its memorandum supporting its motion to dismiss, UHC states that there is "no doubt that the[ three claims seeking relief 'related to the non-payment of goods and services'] are inextricably intertwined with – and thus arise under – the Medicare Act." Def.'s mem. supp. mot. dismiss at 8 [ECF No. 41]. PHHI's response does not expressly counter this argument. See Pl.'s opp'n mot. dismiss [ECF No. 49].

which are claims intertwined with claims for benefits available under Part C of the Medicare Act. PHHI's state law claims, therefore, arise under the Medicare Act and this Court's exercise of subject matter jurisdiction over PHHI's state law claims for breach of contract, quantum meruit, and unjust enrichment is barred by the third sentence of 42 U.S.C. Section 405(h) in the absence of administrative exhaustion. See Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1143-44 (9th Cir. 2010) (concluding the plaintiffs' breach of contract and unjust enrichment claims arose under the Medicare Act because they were "at bottom, merely creatively disguised claims for benefits").[14]

PHHI also presents a state law negligent misrepresentation claim (Count IV). The elements of a negligent misrepresentation claim in Missouri are:

> (1)      that [the] defendant supplied information in the course of business or because of some other pecuniary interest; (2) that because of a failure by [the] defendant to exercise reasonable care or competence, the information was false; (3) that the information was intentionally provided by [the] defendant for the guidance of a limited group, including [the] plaintiff[], in a particular business transaction; and (4) that in [justifiably] relying on the information, [the] plaintiff[] suffered a pecuniary loss.

Frame v. Boatmen's Bank of Concord Village, 782 S.W.2d 117, 121 (Mo. Ct. App. 1989); see also Professional Laundry Mgmt. Sys., Inc. v. Aquatic Techs., Inc., 109 S.W.3d 200, 206 (Mo. Ct. App. 2003) (addressing first two elements of a negligent misrepresentation claim); M & H Enters. v. Tri-State Delta Chems., Inc., 35 S.W.3d 899, 904 (Mo. Ct. App. 2001) (setting forth all elements of a negligent misrepresentation claim). PHHI argues that its negligent misrepresentation claim "does not require the Court to determine whether UHC was 'justified' in denying and reimbursing

---

[14]      Accord Kaiser v. Blue Cross of Cal.. 347 F.3d 1107, 1112, 1114-15 (9th Cir. 2003) (concluding a claim that a Medicare insurer did not "abide by [its] contractual obligations" to a home health provider was, along with other claims, "inextricably intertwined" with claims for Medicare reimbursement and arose under the Medicare Act); Bodimetric, 903 F.2d at 483, 488 (state law claims of the owner of home health services providers, including a breach of contractual relationship claim, arose under the Medicare Act and were subject to Section 405(h)).

identical claims for services" or to "wade into the Medicare Act or regulations" to assess PHHI's right to recover for UHC's allegedly tortious conduct. Pl's opp'n mot. dismiss at 7 and 6 [ECF No. 49]. Instead, PHHI contends, this claim requires PHHI only to "prove that UHC's representations were false," and PHHI may establish the falsity of UHC's representations through UHC's "contradictory representations and behavior" and "UHC's own statements admitting that its representations regarding S9325 and S9328 were false." Id. at 7-8. Although citing a Missouri case, Frame, supra, for the elements of a negligent misrepresentation claim, PHHI does not cite Missouri case law supporting its argument that it may establish the falsity of UHC's representations through UHC's "contradictory representations and behavior" and "own statements" regarding the falsity of its representations regarding S9325 and S9328.

In support of its position that its negligent misrepresentation claim does not arise under the Medicare Act, PHHI cites: Family Rehab., Inc. v. Azar, 886 F.3d 496, 503 (5th Cir. 2018) ("Family Rehab."); Hofler v. Aetna US Healthcare of Cal., Inc., 296 F.3d 764, 769 (9th Cir. 2002) (per curiam), abrogated on other grounds by Martin v. Franklin Capital Corp., 546 U.S. 132 (2005); Mann v. Reeder, No. 1:10-CV-00133-JHM, 2011 WL 6645749, at *3 (W.D. Ky. Feb. 15, 2011); and Kelly v. Advantage Health, Inc., No. CIV A 99-0362, 1999 WL 294796, at *4 (E.D. La. May 11, 1999). Pl's opp'n mot. dismiss at 6 [ECF No. 49]. These cases are not persuasive. In Family Rehab., the Fifth Circuit did not address the issue whether the plaintiff provider's claims arose under the Medicare Act, because the plaintiff "concede[d] that its claims 'arise under' the Medicare Act." Family Rehab., 886 F.3d at 501. In Hofler, the Ninth Circuit found a widow's state law claims did not arise under the Medicare Act, because the harm the plaintiff suffered "would not be remedied by payment of benefits" in that it was "too late for the deceased" to get a second opinion, obtain tests, or receive treatment, services available and reimbursable through the Medicare Act.

Hofler, 296 F.3d at 769 (relying on the Ninth Circuit decision in Ardary v. Aetna Health Plans of Cal., Inc., 98 F.3d 496 (9th Cir. 1996)).  In Kelly, the Eastern District of Louisiana found the plaintiff's state law claims were not inextricably intertwined with a claim for benefits because "[t]here are no Medicare benefits to be reimbursed or provided either now or in the future" due to the plaintiff's receipt of "all of the requested [Medicare] benefits during either his first or second hospital stay."  Kelly, 1999 WL 294796, at *4.

Additionally, the Mann decision cited by PHHI supports this Court's analysis to the extent it found one of the plaintiffs' three state law claims did arise under the Medicare Act.  In Mann, the Western District of Kentucky concluded that claims (1) "that the[ plaintiffs] would not have enrolled in the Medicare [Advantage Plan] but for [the individual defendant]'s alleged misrepresentations" and (2) that the defendant insurer breached the parties' alleged agreement for a "special premium rate beyond what appeared in the [Medicare] Act" did not arise under the Medicare Act, but the plaintiffs' claim that the defendants "failed to appropriately disenroll [the p]laintiffs from the Plan" did arise under the Medicare Act because "[t]he disenrollment procedures are specifically regulated, monitored, and controlled by CMS."  Mann, 2011 WL 6645749, at *3.  Here, the Court similarly concludes PHHI's state law claims, including its negligent misrepresentation claim, arise under the Medicare Act because they are inextricably intertwined with claims that PHHI is entitled to receive benefits for services it rendered to patients enrolled in UHC's Medicare Advantage Plan.  While PHHI characterizes its claims as seeking relief beyond the bounds of the Medicare Act, the conduct supporting its claims occurred as a result of the parties' involvement in or relationship to the Medicare Act.  None of PHHI's claims arise out of conduct occurring outside the bounds of the Medicare Act, i.e., conduct occurring

before the Medicare Act applied to the parties' relationship (such as the conduct supporting the two claims the Western District of Kentucky found did not arise under the Medicare Act in <u>Mann</u>).

PHHI also contends the Ninth Circuit's decision in <u>Ardary</u> supports a determination that PHHI's negligent misrepresentation claim does not arise under the Medicare Act. Pl.'s opp'n mot. dismiss at 8 [ECF No. 49]. PHHI points to the Ninth Circuit's finding that the plaintiffs' state law claims, including a negligent misrepresentation claim, were not "inextricably intertwined" with a denial of benefits, as well as the fact the Ninth Circuit distinguished the Seventh Circuit's decision in <u>Bodimetric</u>, <u>supra</u>. Pl.'s opp'n mot. dismiss at 8 (citing <u>Ardary</u>, 98 F.3d at 500 and 501).

In <u>Ardary</u>, the Ninth Circuit addressed the plaintiffs' six state law claims, including a negligent misrepresentation claim, seeking general and punitive damages from a Medicare insurer and its Medicare plan administrator for the death of the plaintiffs' wife and mother, which was allegedly caused by the failure of the administrator to authorize airlift transportation to a facility having "intensive [and] cardiac care facilities" not available at the local facility. <u>Ardary</u>, 98 F.3d at 497-98. The Ninth Circuit found the plaintiffs were not "at bottom . . . seeking to recover benefits," as stated in <u>Ringer</u>, even though they conceded "their wrongful death complaint [was] 'predicated on' [the Medicare plan administrator]'s failure to authorize the airlift transfer." <u>Id.</u> at 500. In particular, the Ninth Circuit noted that the decedent's death "cannot be remedied by the retroactive authorization or payment of [an] airlift transfer." <u>Id.</u> Furthermore, the Ninth Circuit disagreed with the defendants' argument that the Seventh Circuit's decision in <u>Bodimetric</u> supported a determination that "any claim related to the denial of Medicare benefits 'arises under' the [Medicare] Act." <u>Id.</u> The Ninth Court concluded the defendants' arguments that the plaintiffs'

claims were "'inextricably intertwined' with the claim that [the decedent] was improperly denied benefits simply misapplies Ringer and Bodimetric on these facts." Id. at 501.

For the reasons discussed earlier, the Ninth Circuit's decision in Ardary fails to support a conclusion that PHHI's state law claims, in particular its negligent misrepresentation claim, are not "inextricably intertwined" with claims for Medicare benefits. Specifically, (1) the facts supporting PHHI's claims are significantly distinguishable from the wrongful death claims in Ardary and "at bottom" seek to recover Medicare benefits, as required by Ringer, and (2) in Midland, supra, the Eighth Circuit relied on, rather than distinguished, the Seventh Circuit's decision in Bodimetric with respect to a state law tort claim.

PHHI's negligent misrepresentation claim requires a determination that the relevant representations were false in light of the Medicare Act. As PHHI alleges, UHC's allegedly false representations were "that service codes S9325 and S9328 were reimbursable." Pl.'s first am. compl. para. 55 [ECF No. 38]; see also id. paras. 50-54. Clearly the alleged misrepresentations pertain to whether certain services PHHI provided to enrollees in UHC's Medicare Advantage plan were reimbursable under that plan. PHHI's negligent misrepresentation claim is, therefore, inextricably intertwined with claims for Medicare benefits and arises under the Medicare Act, requiring exhaustion of administrative remedies before judicial review. See Midland, 145 F.3d at 1004 (a tortious-interference-with-contract claim arose under the Medicare Act); Bodimetric, supra (state law claims, including a negligent representation claim, arose under the Medicare Act).

To the extent PHHI urges its requests for equitable or injunctive relief (in Counts I and V) support a conclusion those claims are not "inextricably intertwined" with claims for Medicare Act benefits,[15] the Court disagrees. The Supreme Court in Ringer addressed claims that sought only

---

[15] See Pl.'s opp'n mot. dismiss at 5-6 [ECF No. 49].

declaratory and equitable relief and found those claims "inextricably intertwined" with claims for Medicare benefits. Ringer, 466 U.S. at 610-11, 624. In its later decision in Shalala, the Supreme Court stated the Ringer and Salfi decisions "foreclose distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." Shalala, 529 U.S. at 14.[16] Therefore, claims may arise under the Medicare Act "regardless of the type of relief [the] plaintiff is requesting." Great Rivers Home Care, Inc. v. Thompson, 170 F. Supp. 2d 900, 904 (E.D. Mo. 2001). PHHI's claims for equitable relief are, in essence, efforts by PHHI to obtain payment for services PHHI provided, or will provide, to UHC's Medicare Advantage patients, claims that "aris[e] under" the Medicare Act for purposes of the third sentence of Section 405(h). Accordingly, PHHI's requests for equitable relief do not foreclose this Court's determination that PHHI's state law claim for breach of contract in Count I, as well as PHHI's claim for "preliminary and permanent injunction" in Count V,[17] are inextricably intertwined with Medicare benefit claims.

PHHI further urges its state law claims do not arise under the Medicare Act because enrollees received the relevant medical services. PHHI cites four cases in support of this argument: Rencare, Ltd. v. Humana Health Plan of Tex., Inc., 395 F.3d 555, 559-60 (5th Cir. 2004)

---

[16] In Shalala, the Supreme Court further specified that, with respect to the language and purpose of Section 405(h), "[t]here is no reason to distinguish among:"

> [c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy [that] may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions.

Shalala, 529 U.S. at 14.

[17] By finding PHHI's claim for preliminary and permanent injunction in Count V arises under the Medicare Act for purposes of Section 405(h), the Court is not concluding the claim states a claim for relief under Missouri law, an issue not now before the Court.

("Rencare"); Canandaigua Emergency Squad, Inc. v. Rochester Area Health Maint. Org., Inc., 780 F. Supp. 2d 313, 320 (W.D. N.Y. 2011) ("Canandaigua"); Our Lady of Lake Reg'l Med. Ctr. v. Ochsner Health Plan, Inc., No. CV03-371-D-M2, 2005 WL 8155431, at *7 (M.D. La. Aug. 5, 2005) ("Our Lady"); and Christus Health Gulf Coast v. Aetna, Inc., 237 S.W.3d 338, 344 (Tex. 2007) ("Christus"). Pl.'s opp'n mot. dismiss at 4-5 [ECF No. 49]. As UHC points out, the claims in three of those cases involved state law claims by providers who had a contract with the insurer. In Rencare, the Fifth Circuit addressed claims for breach of contract, detrimental reliance, fraud, and violations of state law pursued by a provider who had contracted with an insurer "to provide kidney dialysis services to [the insurer]'s enrollees, including its [Medicare Advantage] enrollees." Rencare, 395 F.3d at 557. The Fifth Circuit concluded the provider's state law claims were not inextricably intertwined with a claim for Medicare benefits because "[t]he dispute [wa]s solely between [the insurer] and [the provider] and [wa]s based on the parties' privately-agreed-to-payment plan." Rencare, 395 F.3d at 558. In Our Lady, the Middle District of Louisiana found the insurer health plan had contracted with the provider hospital "to provide benefits to [the plan]'s enrollees, and the claims for reimbursement are solely between" the provider hospital and the insurer. Our Lady, 2005 WL 8155431, at *7. In Christus, the Texas Supreme Court addressed payment dispute claims between an entity administering a Medicare Advantage Organization's plan and hospitals that had contracted with the administrator to provide services to the plan's enrollees, and concluded the claims belonged in state court. Christus, 237 S.W.3d at 340, 341. Specifically, the Texas Supreme Court found that "a dispute about who is contractually obligated to pay is different from failing to pay due to a lack of coverage." Id. at 344.

Unlike those cases, the provider here, PHHI, does not have a contract with UHC. Instead, PHHI is seeking relief as an assignee of UHC's Medicare Advantage enrollees who received

PHHI's services. "[T]he distinction between contract providers and noncontract providers is critical. In billing disputes between [Medicare Advantage Organizations] and contract providers, the provider is pursuing a claim for reimbursement that only ever belonged to itself, -- the claim that arose under the express terms of its contract with the [Medicare Advantage Organization]." Tenet Healthsystem GB, Inc., 875 F.3d at 590. Non-contract providers, however, only have a "viable claim . . . to recover the same reimbursements that the [Medicare Advantage] enrollees were entitled to receive under the Medicare Act, and that claim is subject to the Act's administrative exhaustion requirement." Id. (relying on 42 C.F.R. § 422.214[18]).

In the fourth case cited by Plaintiff, the 2011 decision in Canandaigua, the Western District of New York found that it was "simply immaterial" whether a provider had a contract with the Medicare Advantage Organization. Canandaigua, 780 F. Supp. 2d at 321. The court decided, in relevant part, that regardless of the presence of a contract between the plaintiff ambulance service providers and the Medicare Advantage Organization, the enrollees had not been denied and "were [not] in danger of being denied" benefits, and therefore, the ambulance service providers' state law claims did not arise under the Medicare Act. Canandaigua, 780 F. Supp. 2d at 320-21. However, a more recent and persuasive Eleventh Circuit decision in Tenet Healthsystem GB, Inc., undercuts the holding in Canandaigua. As the Eleventh Circuit concluded, under applicable

---

[18] 42 C.F.R. § 422.214(a)(1) states that

> Any provider . . . that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary enrolled in an [Medicare Advantage] coordinated care plan, an MSA plan, or an [Medicare Advantage] private fee-for-service plan must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare.

Accord 42 U.S.C. § 42 U.S.C. § 1395w-22(k)(1); see also 42 C.F.R. § 422.214(c) (providing that a non-contract provider of services to Medicare Advantage "enrollees . . . is deemed to be seeking to be paid the amount it would be paid under Original Medicare unless the provider expressly notifies the [Medicare Advantage O]rganization in writing that it is billing an amount less than such amount"). Nothing in the first amended complaint indicates PHHI notified UHC in writing that it was "billing an amount less than" the amount payable under "Original Medicare" for the services PHHI provided to UHC's Medicare Advantage enrollees.

regulatory provisions, the distinction between a contract provider and a non-contract provider is significant, and the non-contract provider's only "viable claim" is to recover the amount of Medicare benefits to which the Medicare Advantage enrollees whom the provider served are entitled under the Medicare Act.  See Tenet Healthsystem GB, Inc., 875 F.3d at 590.

In this case, the fact the UHC Medicare Advantage enrollees obtained the services of PHHI before PHHI, as assignee of those enrollees, sought compensation for those services from UHC does not preclude this Court from concluding that PHHI's state law claims related to those services are inextricably intertwined with benefit claims under the Medicare Act and arise under the Medicare Act.  Accordingly, based on the factual allegations in the first amended complaint, the Court concludes PHHI's state law claims arise under the Medicare Act, requiring administrative exhaustion prior to judicial review.

### (4) Administrative Exhaustion

It is undisputed that PHHI has not alleged it has exhausted, and it has not exhausted, the administrative process required before judicial review of its state law claims that arise under the Medicare Act.  Specifically, UHC points out that PHHI "acknowledges that [its] claims have made it to the third-party review stage, but does not (and cannot allege[)] that [PHHI] appealed to and obtained a ruling from the Medicare Appeals Council, as required by 42 U.S.C. § 1395-22(g)(5)."  Def.'s mem. supp. mot. dismiss at 12 [ECF No. 41].

For a federal district court to have subject matter jurisdiction under 42 U.S.C. § 405(g), a claimant must, in relevant part, "exhaust[] administrative remedies prescribed by the Secretary."  Schoolcraft v. Sullivan, 971 F.2d 81, 84-85 (8th Cir. 1992);[19] accord Ringer, 466 U.S. at 617 ("the

---

[19]    Additionally, for a district court to exercise subject matter jurisdiction under 42 U.S.C. § 405(g), "a claimant must . . . present[] a claim for benefits to the Secretary."  Schoolcraft v. Sullivan, 971 F.2d 81, 84-85 (8th Cir. 1992) (citing Salfi, 422 U.S. 749).  This element of a court's subject matter jurisdiction is not waivable.  Id. at 85.  Neither party challenges PHHI's compliance with this element. See, e.g., Def.'s mot. dismiss at 12 [ECF No. 41].  The

exhaustion requirement [of 42 U.S.C. § 405(g)] . . . is a prerequisite to jurisdiction under that provision"). In exceptional circumstances, a court may excuse or waive compliance with the exhaustion of administrative remedies requirement for the court's subject matter jurisdiction. Degnan v. Burwell, 765 F.3d 805, 808 (8th Cir. 2014). A claimant seeking waiver of the exhaustion requirement must establish "(1) [its] claims to the district court are collateral to [its] claim [to] benefits; (2) that irreparable injury will follow [compliance with the administrative remedies exhaustion requirement]; and (3) that exhaustion will otherwise be futile." Id. (internal quotation marks omitted) (quoting Titus, 4 F.3d at 592).

PHHI does not allege or contend it has exhausted the administrative process with respect to any of its claims. Instead, PHHI argues the Court must waive or excuse the administrative exhaustion requirement because: (1) PHHI's state law claims are collateral to a claim for benefits, (2) PHHI's exhaustion of administrative remedies would be futile, and (3) PHHI will suffer irreparable harm if the Court requires it to pursue administrative remedies. Pl.'s opp'n mot. dismiss at 10-15 [ECF No. 49]. In support of its position, PHHI relies on Bowen v. City of New York, 476 U.S. 467 (1986), Schoolcraft, supra, and Mental Health Ass'n of Minn. v. Heckler, 720 F.2d 965 (8th Cir. 1983) ("Mental Health"). These cases do not support a determination PHHI may avoid the administrative exhaustion requirement prior to judicial review of its state law claims based on the allegations in PHHI's first amended complaint.

In Bowen, the Supreme Court, in relevant part, concluded the district court did not err in waiving the administrative exhaustion requirement for the plaintiff class of Social Security

---

allegations in PHHI's first amended complaint do not, however, explicitly state that PHHI has presented a claim for benefits beyond its presentation of its claims to UHC. To the extent PHHI's allegations and conduct are insufficient to demonstrate PHHI has presented its claims for benefits to the Secretary, such non-compliance by PHHI is another basis for finding this Court lacks subject matter jurisdiction over PHHI's lawsuit. See Ringer, 466 U.S. at 622 (finding a claimant who had "not given the Secretary an opportunity to rule on a concrete claim for reimbursement . . . ha[d] not satisfied the nonwaivable exhaustion requirement of § 405(g) [and t]he District Court, therefore, had no jurisdiction as to" that claimant's claim).

disability claimants who were challenging "a systemwide, unrevealed [Social Security Administration] policy that was inconsistent in critically important ways with established regulations."[20]  Bowen, 476 U.S. at 482-86.  The plaintiff class consisted of claimants who had not exhausted their administrative appeals and claimants who "may still have had time to exhaust their administrative remedies."  Id. at 482.  The Supreme Court found the exhaustion requirement waived in accordance with the collateral claim, futility of administrative relief, and irreparable injury elements set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  Bowen, 476 U.S. at 482-86.

In particular, the Supreme Court in Bowen concluded the claims in the lawsuit were "collateral to the claims for benefits that [the] class members had presented administratively," because the class members "challenged the Secretary's failure to follow the applicable regulations" and did not seek an award of benefits.  Id. at 483.  Regarding the futility element, the Supreme Court noted the district court found exhaustion would be futile because the challenged policy "was being adhered to by state agencies due to pressure from" the Social Security Administration.  Id. at 485.  The Supreme Court also concluded "the [class] claimants . . . would be irreparably injured were the exhaustion requirement now enforced against them."  Id. at 483-84.  With respect to the irreparable injury element, the Supreme Court relied on the unchallenged finding of the district

---

[20]  The Supreme Court in Bowen explained that:

> [t]he determination whether an individual is disabled [under the Social Security Act] is made initially by a state agency acting under the authority and control of the Secretary [of Health and Human Services]. . . .  All decisions by the state agency are subject to [review by specified offices of the Social Security Administration ("SSA")].  If the responsible SSA officials determine during either review that a state agency erred, the case is "returned" to the State for correction.

Bowen v. City of New York, 476 U.S. 467, 471 (1986).  The plaintiffs in Bowen, in relevant part, "contended that the [unlawful, unpublished] policy [they challenged] mandated a presumption – applicable at the level of the initial state psychiatric assessment – that a failure to meet or equal the listings was tantamount to a finding [that the claimant had the] ability to do at least unskilled work."  Bowen, 476 U.S. at 473.

court that many class members "ha[d] been hospitalized due to the trauma of having disability benefits cut off" and the claimants would not be adequately protected from that harm by requiring exhaustion.  Id.

As an additional consideration, the Supreme Court stated "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the Eldridge factors, but should also be guided by the policies underlying the exhaustion requirement." Bowen, 476 U.S. at 484.  The Court noted the following as the purposes or policies of the exhaustion requirement:  "preventing premature interference with agency processes, so that the agency may function efficiently and so that [the agency] may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a record which is adequate for judicial review."  Id. (internal quotation marks omitted) (quoting Salfi, 422 U.S. at 765).  The Supreme Court concluded "[t]he purposes of the exhaustion requirement would not be served by requiring" the class members to exhaust administrative remedies.  Bowen, 476 U.S. at 484.  Specifically, the Supreme Court characterized the case as

> materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding.  In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation.  Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context.  Thus, our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings.

Id. at 484-85.

Here, unlike the plaintiffs in Bowen, PHHI is not challenging an agency-wide irregularity in the consideration of similar Medicare benefit requests.  Rather, PHHI challenges UHC's consideration of PHHI's own claims to payments for services PHHI provided to enrollees in

UHC's Medicare Advantage plan. The allegations supporting PHHI's state law claims do not establish that its claims are sufficiently collateral to a claim by PHHI for Medicare benefits to support a decision that the administrative remedy need not be exhausted. To the contrary, as this Court earlier discussed, PHHI's claims are "inextricably intertwined" with a claim for Medicare benefits. Having concluded PHHI's claims are not "sufficiently collateral" to its claims for Medicare benefits to support waiver of the administrative exhaustion requirement, the Court need not further discuss the futility and irreparable harm requirements for waiver of the administrative exhaustion requirement. Clarinda, 100 F.3d at 531 (concluding it was "unnecessary to consider the second and third parts of the test" when the plaintiff failed to establish "the first part of the test for an exception to the exhaustion requirement").

Consistent with Bowen, moreover, this Court may waive exhaustion of the administrative remedy only after consideration of the purposes and policies of the exhaustion requirement. PHHI's claims are essentially claims seeking payment of amounts allegedly due PHHI under UHC's Medicare Advantage plan for services PHHI rendered to UHC's Medicare Advantage enrollees. Unlike the claims in Bowen, PHHI's claims are not "materially distinguishable" from, but are rather akin to, claims pursued in district court based on alleged "deviation[s]" in the claimant's own proceeding, which deviations are "fully correctable upon subsequent administrative review" and require giving the agency an opportunity to review the deviations in the "particular factual context." See Bowen, 476 U.S. at 484-85. Waiver of the administrative exhaustion requirement here prematurely interferes with the administrative process, fails to allow the Secretary an opportunity to correct any errors in UHC's handling of PHHI's claims, and fails to provide the parties and the court "the benefit of [the agency's] experience and expertise" in resolving PHHI's claims. See id. at 484.

The cases cited by PHHI are not persuasive. In Schoolcraft, supra, the Eighth Circuit found the class claimants' challenges, to the procedures and standards used by a state agency which initially considered disability claims based on chronic alcoholism or some other drug dependency, were "independent of . . . and thus . . . sufficiently collateral [to claims for benefits so as] to support waiver of [the] exhaustion" requirement. Schoolcraft, 971 F.2d at 83, 86. The claimants specifically contended the defendant state agency failed to determine the voluntariness of a claimant's use of alcohol or drugs, an analysis required during review of such a claim for benefits (and an issue addressed by the defendant federal agency that considered such disability claims after the state agency). Id. at 85. In deciding the plaintiffs' claims were sufficiently collateral to support waiver of the exhaustion requirement, the Eighth Circuit found the "suit [was] not for benefits" and "the relief sought by plaintiffs would not determine whether they would receive benefits." Id. at 84. Instead, the Court concluded, the plaintiffs' claims sought as relief the defendants' application of "the same standards to plaintiffs' claims for benefits at each stage of the administrative process." Id.; see also id. at 86 ("the [plaintiff] class does not seek benefits in the district court, rather, as in [Bowen], they challenge the Secretary's failure to ensure that uniform standards are applied at all levels of review").

Here, PHHI's claims, unlike those in Schoolcraft, clearly arise out of UHC's failure to pay amounts PHHI billed UHC for services PHHI rendered to UHC's Medicare Advantage enrollees. While PHHI may in part base its claims on UHC's allegedly inconsistent consideration of services coded as S9325 and S9328, nothing in PHHI's allegations reveals any consideration, much less any inconsistent or improper consideration, of PHHI's claims by the federal agency (here, HHS) after UHC's denial of PHHI's claims. It appears that instead of seeking consistent treatment of claims throughout the federal agency's administrative process, which may support waiver of the

administrative exhaustion requirement under <u>Bowen</u> and <u>Schoolcraft</u>, PHHI seeks payment, without administrative review by the federal agency, of claims it submitted to UHC and UHC denied.

PHHI's reliance on <u>Mental Health</u> is similarly unavailing. In that pre-<u>Bowen</u> case, the Eighth Circuit considered a claim virtually identical to the claim considered by the Supreme Court in <u>Bowen</u>. Having addressed the application to this case of <u>Bowen</u>, the Court need not further discuss the Eighth Circuit's earlier decision in <u>Mental Health</u>. In any event, PHHI's claims in this case are not akin to the claims for injunctive relief in <u>Mental Health</u>.

Based on the factual allegations in PHHI's first amended complaint, the Court concludes the administrative exhaustion prerequisite to judicial review cannot be waived. Having concluded PHHI's claims arise under the Medicare Act and PHHI has not exhausted the administrative remedy before filing this lawsuit, the Court grants UHC's motion to dismiss and dismisses PHHI's claims without prejudice.[21] <u>See</u> <u>Fortner v. Price</u>, 1:16-CV-279 SNLJ, 2017 WL 1177712 (E.D. Mo. Mar. 30, 2017) (granting a motion to dismiss for lack of subject matter jurisdiction upon concluding the plaintiff's claim, which asked the court "to alter, reduce or eliminate Medicare's lien on [the] plaintiff's settlement money" related to a motor vehicle accident, arose under the Medicare Act and the plaintiff had not presented the claim to the Secretary or exhausted administrative remedies with respect to the claim).

## B. Discovery motions

---

[21] Because PHHI does not contend this case should be remanded to state court, this Court need not address UHC's argument that PHHI's failure to satisfy the exhaustion requirement deprives all courts, not just federal courts, of jurisdiction. <u>See</u> Def.'s mot. dismiss at 13 n. 7 [ECF No. 41].

Additionally, the Court need not discuss UHC's pre-emption argument due to the Court's conclusion that dismissal is proper based on PHHI's failure to exhaust administrative remedies pertaining to its claims, which arise under the Medicare Act.

Because the Court grants UHC's motion to dismiss, the Court vacates the stay of discovery and denies without prejudice as moot PHHI's motions for sanctions and to compel without further discussion.

After careful consideration,

**IT IS HEREBY ORDERED** that UHC's motion to dismiss [ECF No. 40] is **GRANTED**.

**IT IS FURTHER ORDERED** that the stay of discovery [imposed by ECF No. 85] is **VACATED**.

**IT IS FINALLY ORDERED** that PHHI's motions for sanctions [ECF No. 62] and to compel [ECF No. 77] are **DENIED** without prejudice as moot.

A separate order of dismissal, in accordance with this memorandum and order, is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of November, 2019